OPINION *Page 2 
{¶ 1} Appellant Courtney Dover appeals his conviction in the Stark County Court of Common Pleas for one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11; one count of improperly handling a firearm in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(B); and one count of endangering children, a misdemeanor of the first degree, in violation of R.C.2919.22(A). The felonious assault charge included a firearm specification. R.C. 2941.145. The appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On January 12, 2007, Perry Township Police Officer William Watson responded to the scene of a shooting at the Marc's Plaza on Tuscarawas Street in Perry Township, Ohio. As he pulled into the parking lot, he saw a man lying on the ground bleeding from a large wound in the buttocks area. Officer Watson saw no weapon but taped off the area as a crime scene and asked for the names of any witnesses. Officers located the injured man's vehicle, still running, in the parking lot. Sarah Dotson, who was shopping with her daughter, told Officer Watson that she heard what sounded like a cap gun and saw a man stumble, and collapse. She approached the injured man and determined that he was bleeding. The man requested that she contact his girlfriend. She then saw a dark car with circular brake lights leave the parking area. Ms. Dotson called 911.
 {¶ 3} The police did not recover a weapon or shell casings from the scene of the incident. Prior to being taken by ambulance to the hospital, the injured man told police that "Corey" had shot him. *Page 3 
 {¶ 4} The ambulance squad arrived and took the injured man to Aultman Hospital. The injured man was later identified as George Curlutu. George Curlutu is a twice-convicted unemployed felon. In 2000, he was convicted of possession of cocaine and marijuana and sentenced to three (3) years in prison. In 2004, he was convicted of a second count of possessing cocaine and tampering with evidence. He served a two (2) year prison term.
 {¶ 5} Mr. Curlutu and appellant were acquaintances and met at St. Mary's Church in Massillon, Ohio at a Texas Hold-Em tournament. They occasionally played poker and smoked weed at appellant's residence on 4th Street by the Canton Baptist Temple. The day of the shooting, January 12, 2007, appellant used his cell phone to call Mr. Curlutu and ask him to meet him at the Aldi's parking lot. Sensing a chance to go on a "blunt ride" — where you smoke weed together-Mr. Curlutu skipped his classes at barber school and met appellant at the parking lot. Mr. Curlutu knew appellant only as "C" or "Corey."
 {¶ 6} Mr. Carlutu testified that on the day in question he smoked marijuana. He further stated that he was under the influence of marijuana at the time of the incident. Medical records indicated that he also had cocaine and valium in his system. Mr. Carlutu denied being under the influence of those substances. However, he admitted that he had used narcotics in the days preceding the incident.
 {¶ 7} Mr. Curlutu pulled into the parking lot and waited for appellant who arrived driving a blue Chevrolet Impala with tinted windows. Mr. Curlutu noticed a little girl in a car seat dressed in a pink coat. Mr. Curlutu exited his car, leaving the motor running, and got into appellant's car. Appellant asked Mr. Curlutu if he could borrow some money *Page 4 
-$300 or $400. Mr. Curlutu told appellant he did not have money like that. Appellant responded by reaching down to the left hand part of the door and pulling out a gun — a longer barrel revolver. Mr. Curlutu's first reaction was to grab the revolver with his left hand. A struggle ensued and the revolver landed on the car seat. Mr. Curlutu opened the car door to run and was shot in the buttocks — a near contact gunshot wound.
 {¶ 8} Mr. Curlutu fell down and appellant pulled out of the parking lot. Mr. Curlutu was taken to Aultman Hospital. Surgery was performed and eventually a deformed bullet — a .38 special or .357-caliber bullet — was removed from his buttocks area.
 {¶ 9} Detective Matthew Barker of the Perry Township Police Department was called to the scene to assist in the investigation of the shooting. Detective Barker talked with Mr. Curlutu at the hospital. Mr. Curlutu called his friend, Todd McCune, to learn more about the shooter. Detective Barker learned the shooter's first name was "Courtney," that he drove a blue Chevrolet Impala with tinted windows and lived by the Canton Baptist Temple. Detective Barker also learned that the shooter's cell phone number was (330) 371-3453 and that he had purchased the phone or minutes for the phone at Hever's Meats. Armed with the cell phone number, Detective Barker went to Hever's Meats and learned that the cell phone number belonged to appellant, and that his address was 4456 4th Street N.W., Perry Township, Ohio. Mr. Curlutu showed Detective Barker the residence where the shooter resided and it matched the address of appellant that Detective Barker had obtained from Hever's Meats.
 {¶ 10} Detective Barker placed a photograph of appellant in a photo lineup with five other males with the same physical characteristics. Two days after the shooting, Mr. *Page 5 
Curlutu identified appellant's photograph as the shooter and told Detective Barker that he was 100 percent sure.
 {¶ 11} Molly Felder, the appellant's neighbor, saw the appellant pulling out of his driveway near the time of the incident. She observed him to be wearing a light colored jacket.
 {¶ 12} Detective Barker went to the home on 4th Street identified as appellant's residence. Detective Barker saw signs that someone was home, knocked on the door but received no response. Finally, after about thirty minutes, Tammy Young, appellant's girlfriend and mother of his one-year-old daughter, came home. Ms. Young gave Detective Barker permission to enter the home. Inside the home Detective Barker found appellant carrying a blue cell phone with a telephone number (330) 371-3453. Detective Barker also collected from the home three coats or jackets belonging to appellant and a box of Winchester .38-caliber ammunition. A blue Chevrolet Impala belonging to Ms. Young was also at the residence. Ms. Young testified the appellant had keys to the car. Ms. Young told the police that she was at work at the time of the incident. The appellant was watching their child when she left, but could have taken the child to a baby sitter. She testified that Mr. McCune has come to the house on numerous occasions in the past to purchase drugs.
 {¶ 13} Mr. Curlutu identified Ms. Young's car as the car used by the shooter; Ms. Dotson also identified the vehicle as the car that drove out of the Aldi parking lot.
 {¶ 14} Appellant was taken to the Perry Police Department. Appellant denied knowing Mr. Curlutu when officers showed him his picture. *Page 6 
 {¶ 15} The three coats or jackets belonging to appellant were taken from the home and sent to the Stark County Crime Laboratory for DNA testing. Officers also obtained and sent to the Crime Laboratory oral swabs from the victim, Mr. Curlutu, for comparison. Kylie Graham, a technician with the laboratory compared three areas of bloodstains on a gold coat belonging to appellant with the oral swabs taken from the inner cheek of Mr. Curlutu. Graham opined that the bloodstains on the coat matched Mr. Curlutu's blood in three areas:
 {¶ 16} "[GRAHAM] At the completion of a DNA test, we usually run a statistic when we have a match in order to evaluate how strong a match that is.
 {¶ 17} "In this case, I got back a statistic for the bloodstain on the sleeve of the coat, the back of the coat, and the major profile from the left front of the coat, that was 1 in more than 280 billion." (2T. at 345). Tammy Young testified that the light colored jacket in evidence belonged to the appellant.
 {¶ 18} Michael Short, of the Stark County Crime Laboratory, examined the bullet removed from Mr. Curlutu's buttocks and gunshot residue on blue and white shorts worn by Mr. Curlutu when he was shot. Mr. Short opined that the bullet was a .38 special or .357-caliber bullet that was shot from an operable firearm, most likely a revolver.
 {¶ 19} The case was scheduled for a jury trial to begin on April 10, 2007. Prior to the beginning of voir dire, the State made a motion in limine to prohibit appellant from arguing that the victim was a drug dealer. Appellant's trial counsel objected arguing that his defense was that this incident involved a "drug deal gone bad." The trial court granted the motion in limine but indicated that it would allow appellant to re-address the issue based upon the testimony and evidence presented during trial. *Page 7 
 {¶ 20} After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty to all the charges in the indictment. At the sentencing hearing, the trial court merged the felonious assault conviction with the conviction for improperly handling a firearm in a motor vehicle finding that they arose from the same animus. Appellant received a prison sentence of seven years with a mandatory sentence of three years on the firearm specification for a total of ten years.
 {¶ 21} Appellant now timely appeals his convictions and sentence, raising the following six assignments of error:
 {¶ 22} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 23} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY IMPEDING THE APPELLANT'S ABILITY TO CROSS EXAMINE THE STATE'S WITNESSES.
 {¶ 24} "III. THE APPELLANT WAS DEPRIVED OF DUE PROCESS OF [SIC] BY THE MISCONDUCT OF THE PROSECUTOR.
 {¶ 25} "IV. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.
 {¶ 26} "V. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT IN VIOLATION OF STATE V FOSTER.
 {¶ 27} "VI. THE TRIAL COURT COMMITTED ERROR BY IMPROPELY CHARGING THE JURY." *Page 8 
 I. {¶ 28} In his first assignment of error, appellant maintains that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence. We disagree.
 {¶ 29} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at78 Ohio St.3d 390.
 {¶ 30} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, superseded by the State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St. 3d 89.
 {¶ 31} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing *Page 9 
the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins,78 Ohio St.3d at 386.
 {¶ 32} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 33} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387,678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 34} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and *Page 10 
sufficiency. See State v. Maple (Apr. 2, 2002), 4th Dist. No. 01CA2605,2002 WL 507530, fn. 1; State v. Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. Morris Co. Conversely, underThompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v. Thompkins, 78 Ohio St.3d 380,678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 989." State v. Wilson, 713 Ohio St.3d 382, 387-88, 2007-Ohio-2202
at ¶ 25-26; 865 N.E.2d 1264, 1269-1270.
 {¶ 35} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 36} In State v. Thompkins supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from *Page 11 
a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 37} In the case at bar, appellant was convicted of felonious assault with a firearm specification. R.C. 2903.11(A) provides a definition of felonious assault:
 {¶ 38} "(A) No person shall knowingly do either of the following:
 {¶ 39} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 40} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * ** "
 {¶ 41} R.C. 2901.22 defines "knowingly" as follows:
 {¶ 42} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 43} Appellant was further convicted of improperly handling firearms in a motor vehicle. R.C. 2923.16 provides in relevant part:
 {¶ 44} "(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."
 {¶ 45} Finally, appellant was convicted of one count of child endangering. R.C. 2919.22 provides in relevant part:
 {¶ 46} "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a *Page 12 
mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support . . ."
 {¶ 47} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412).
 {¶ 48} Appellant does not dispute that the victim was shot in the buttocks with a handgun. The victim underwent surgery and has a permanent scar. (1T. at 176-177). Accordingly, the State presented sufficient evidence that the victim suffered "serious physical harm." R.C. 2901.01(A) (5). Further, the State presented sufficient evidence that a "firearm" was used during the commission of the offenses. R.C.2923.11; R.C. 2941.145. The State also presented testimony that appellant's one-year-old daughter was in the car at the time the shooting occurred. (1T. at 169-170). Finally, the State presented evidence that appellant had a loaded handgun in the car which he retrieved in order to threaten the victim. (1T. at 170-172).
 {¶ 49} Appellant's main argument is that the victim attempted to rob him, the appellant, and that the victim was shot during a struggle for the gun. However, the record contains no evidence to support either a claim of accident or a claim of self-defense. *Page 13 
 {¶ 50} After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that appellant was guilty of all of the charges.
 {¶ 51} As noted above, appellant and the victim had played cards at the victim's home on several occasions. (1T. at 167-168; 182; 206). Appellant telephoned the victim and asked him to meet him at the location where the shooting occurred. (1T. at 167-168). Appellant arrived driving a blue Chevrolet Impala with tinted windows. (1T. at 169-170). His infant daughter was in a car seat in the back seat of the car. (Id.). Tammy Young, appellant's girlfriend at the time, and mother of his one-year-old daughter, owns a dark blue Chevrolet Impala. (1T. at 290-291). Ms. Young testified that appellant has keys to the vehicle and does drive it on occasion. (Id. at 252). Ms. Young further testified appellant was caring for the couple's daughter on the day of the shooting while she was at work. (1T. at 254). Bloodstains on one of appellant's jackets matched that of the victim. (2T. at 345). When shown the victims picture, appellant denied that he knew him. (1T. at 294).
 {¶ 52} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of felonious assault, improperly handling firearms in a motor vehicle and endangering children.
 {¶ 53} We hold, therefore, that the State met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support appellant's convictions. *Page 14 
 {¶ 54} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 55} Although appellant cross-examined the witnesses and argued that the victim was not credible because he was under the influence of marijuana at the time, and further is a convicted felon, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 56} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, *Page 15 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 57} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 58} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 59} Accordingly, appellant's first assignment of error is overruled.
 II. {¶ 60} In his second assignment of error appellant contends that the trial court's refusal to allow him to cross-examine the victim concerning whether he, the victim, had arranged to meet with appellant to sell drugs in order to show that the victim was shot as a result of a drug deal gone bad constituted a denial of due process.
 {¶ 61} We will not address the merits of appellant's argument as appellant failed to preserve the error by objecting at trial and proffering the evidence he wished to present. (1T. at 197).
 {¶ 62} "The effect of the granting of a motion in limine in favor of the State in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion. At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motionin limine, to seek the introduction of the evidence by proffer or otherwise in order to enable *Page 16 
the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." State v.Grubb (1986), 28 Ohio St.3d 199, 203 503 N.E.2d 142, 147. (Emphasis in original). (Citations and footnotes omitted).
 {¶ 63} In State v. Pyo, Delaware App. No. 04CAA01009, 2004-Ohio-4768, we explained:
 {¶ 64} "`In general, the ruling on a motion in limine does not preserve the record on appeal and an appellate court need not review the ruling unless the claimed error is preserved by an objection at trial.State v. Grubb (1986), 28 Ohio St.3d 199, 503 N.E.2d 142, paragraph two of the syllabus, citing State v. Leslie (1984), 14 Ohio App.3d 343, 344,471 N.E.2d 503; State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523, paragraph three of the syllabus; State v. Maurer (1984),15 Ohio St.3d 239, 259 N.E.2d 633; Columbus v. Sullivan (1982), 4 Ohio App.3d 7,9, 446 N.E.2d 485; State v. Steiner (July 19, 1983), Stark App. No. CA-6145, unreported.' State v. Crowley (Aug. 27, 1998), Perry County App. No. 97 CA 69." Id. at ¶ 19.
 {¶ 65} In the case at bar, appellant failed to make any such objection and proffer and therefore we conclude, consistent with Evid.R. 103, that he waived his right to object to the evidentiary issue on appeal.State v. Grubb, supra.
 {¶ 66} Appellant's second assignment of error is overruled.
 III. {¶ 67} In his third assignment of error, appellant contends that prosecutorial misconduct resulted in reversible error. We disagree. *Page 17 
 {¶ 68} Specifically, appellant contends that the prosecutor improperly vouched for the credibility of the victim during closing argument by stating, "I believe that there is only one story you can believe." Further appellant contends that the prosecutor improperly referred to his right not to testify when she stated, "I would ask you again to review the actual evidence that was put in front of you, the actual testimony that you heard with your own ears, and find the defendant guilty . . ." (2T. at 440).
 {¶ 69} The prosecutor's duty in a criminal trial is two-fold. The prosecutor is to present the case for the State as its advocate and the prosecutor is responsible to ensure that an accused receives a fair trial. Berger v. U. S. (1935), 295 U. S. 78; State v. Staten (1984),14 Ohio App. 3d 197.
 {¶ 70} Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 514 N.E.2d 394;State v. Maurer (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. The touchstone of analysis is "the fairness of the trial, not the culpability of the prosecutor." State v. Underwood (1991),73 Ohio App.3d 834, 840-841, 598 N.E.2d 822, 826, citing Smith v. Phillips
(1982), 455 U.S. 209, 219, 102 S. Ct. 940, 947, 71 L.Ed.2d 78, 87-88. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. State v.Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203, 209-210;Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144.
 {¶ 71} Appellant did not object to the comments to which he now claims error. Therefore, for those instances, we must find plain error in order to reverse. *Page 18 
 {¶ 72} In U.S. v. Dominguez Benitez (June 14, 2004), 542 U.S. 74,124 S.Ct. 2333, 159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U. S. 279, 309-310
(1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." 124 S.Ct. at 2339. See, also,State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also,State v. Fisher, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7,789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v.Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry
(2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, quoting State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118,802 N.E.2d at 646.
 {¶ 73} The State may comment upon a defendant's failure to offer evidence in support of its case. State v. Collins (2000),89 Ohio St. 3d 524, 733 N.E.2d 1118. "Such *Page 19 
comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29,733 N.E.2d 1118. The State must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.
 {¶ 74} "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." State v. Petro (1948), 148 Ohio St. 473, 498, 162, 76 N.E.2d 355,367; State v. Champion (1924), 109 Ohio St. 281, 289-290, 142 N.E. 141,143-144. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193,1993-Ohio-170, 616 N.E.2d 909, 916.
 {¶ 75} In State v. demons the Ohio Supreme Court stated; "[t]he comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper,State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. State v. Williams (1986),23 Ohio St.3d 16, 19-20, 23 OBR 13, 16-17, 490 N.E.2d 906, 910-911; State v.Bies (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754, 760."demons, supra, 82 Ohio St.3d 438, 452, 1998-Ohio-452, 692 N.E.2d 1009,1022.
 {¶ 76} The appellant in the case at bar mischaracterizes the prosecutor's statements. The comments concerning the "actual evidence" did not implicate the *Page 20 
appellant's constitutional rights. Rather, the prosecutor was commenting on the lack of evidence and not on the fact that appellant had not testified, or presented a defense.
 {¶ 77} With respect to appellant's contention that the prosecutor improperly vouched for the credibility of the victim, we note that the appellant mischaracterizes the State's argument. During the rebuttal argument, the prosecuting attorney argued:
 {¶ 78} "I believe that there is only one story you can believe. It is the story by [the victim]. He told you what happened in that car. The evidence supports it. The physical evidence supports it. Where he was shot supports it. The DNA on the jacket supports it. All the other testimony supports it." (2T. at 440).
 {¶ 79} In State v. Draughn (1992), 76 Ohio App. 3d 666,602 N.E. 2d 790, this Court stated: "[i]n opening closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, `I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See State v. Smith (1984),14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. Id.
 {¶ 80} "As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, The evidence supports the conclusion that the defendant is lying, is not telling *Page 21 
the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth.' See State v. Strobel (1988),51 Ohio App.3d 31, 554 N.E.2d 916. He may not say, `I believe the defendant is lying,' for the same reasons as above.
 {¶ 81} "In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.
 {¶ 82} "Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.
 {¶ 83} "However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case.United States v. Solivan (C.A.6, 1991), 937 F.2d 1146". Id. at 670-71,602 N.E. 2d at 793. *Page 22 
 {¶ 84} We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comment not been made on the part of the prosecution. State v. Benge, 75 Ohio St. 3d 136, 141, 1996-Ohio-227.
 {¶ 85} In the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.
 {¶ 86} Appellant's third assignment of error is overruled.
 IV. {¶ 87} In his fourth assignment of error, appellant argues that he was denied effective assistance of trial counsel.
 {¶ 88} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 89} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a *Page 23 
strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 90} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra;Bradley, supra.
 {¶ 91} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 92} Appellant's assignment of error concerns his counsel's failure to request an in camera inspection of written witness statements and police reports available, pursuant to Crim.R. 16(B) (1) (g) for the purposes of impeaching the State's witnesses on cross-examination. Appellant does not articulate how requesting an in camera inspection of the witness statements would have resulted in a different outcome or trial strategy.
 {¶ 93} Prior to trial, the defendant may file a motion which seeks discovery of reports of either the testifying officer or a witness' narrative statement, which would be *Page 24 
substantially recorded in verbatim without selection or interpretation by the transcriber. State v. Johnson (1978), 62 Ohio App.2d 31,403 N.E.2d 1003.
 {¶ 94} Pursuant to Crim. R. 16, where there has been a demand for an in camera inspection of a witness' statement, it is mandatory that the court grant the defendant's motion for an inspection. Cleveland v.Austin (1978), 55 Ohio App.2d 215, 380 N.E.2d 1357. The defendant, however, is not entitled to discovery of all reports. State v.Smith (1976), 50 Ohio App.2d 183, 362 N.E.2d 1239.
 {¶ 95} Criminal Rule 16(B) (1) (g) states, in part:
 {¶ 96} "(A) Demand for Discovery. Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided.
 {¶ 97} "(B) Disclosure of Evidence by the Prosecuting Attorney.
 {¶ 98} "(1) Information subject to disclosure.
 {¶ 99} "* * *
 {¶ 100} "(g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 101} "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies. *Page 25 
 {¶ 102} "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 {¶ 103} "Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
 {¶ 104} Appellant argues that trial counsel's failure to follow Crim. R. 16 concerning in camera inspection of witness statements constitutes ineffective assistance of counsel. We cannot determine whether counsel erred, or whether appellant was prejudiced by any error, as the witness statements are not a part of the record on appeal. State v. Nieb, Stark App. No. 2001CA00349, 2002-Ohio-4666; State v. Bachtel, Holmes App. No. 99-CA-011, 2002 Ohio 2528.
 {¶ 105} Further, we note that counsel did impeach the victim at trial with his drug use. (1T. at 194-195). Counsel further cross-examined the victim concerning his two prior felony convictions, one of which was for trafficking in drugs. (1T. at 196). Additionally, counsel elucidated testimony that the victim was able to pay child support in spite of the fact that he was not employed. (1T. at 195). The record contains no evidence that the written statements of Mr. McCune and Ms. Dodson contained exculpatory information or would otherwise have exonerated appellant. The jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness' credibility.
 {¶ 106} Where there is sufficient independent evidence of a defendant's guilt, there is no prejudice and reversal is unwarranted.State v. Moritz (1980), *Page 26 63 Ohio St.2d 150, 407 N.E.2d 1268. The alleged victim in this case, testified at trial and was subjected to full cross-examination by defense counsel. As we noted, reversal of a conviction or sentence based on ineffective assistance requires finding both deficient performance and prejudice.Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 107} As to appellant's claim of ineffective assistance concerning failure to request a Crim. R. 16 (B)(1)(g) inspection of the statements, appellant fails to establish prejudice, namely, "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley,42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Since the issue may be disposed of under the second prong of theStrickland test, there is no need to consider whether the failure to make such a request was ineffective assistance of counsel.
 {¶ 108} Appellant next argues that counsel was ineffective in failing to object to a jury instruction given on "possession" during the portion of the jury instructions on the charge of improperly handling of firearms in a motor vehicle charge. Again, appellant does not articulate how objecting would have resulted in a different outcome or trial strategy.
 {¶ 109} The trial court instructed the jury as follows:
 {¶ 110} "Possession: Possession of a firearm is an essential element of the offense of improperly handling firearms in a motor vehicle. *Page 27 
 {¶ 111} "Possession is a voluntary act that the possessor knowingly procured or received the throwing stars/knives, or was aware of his control thereof for a sufficient period of time to have ended his possession." (2T. at 457).
 {¶ 112} Certainly, the mention of "throwing stars/knives" was taken from a form jury instruction and not intended to be inserted into the jury instructions for improperly handling firearms in a motor vehicle.
 {¶ 113} As to appellant's claim of ineffective assistance concerning failure to object, appellant fails to establish prejudice, namely, "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. As previously mentioned, the State presented sufficient evidence that a "firearm" was used during the commission of the offenses.
 {¶ 114} Since the issue may be disposed of under the second prong of the Strickland test, there is no need to consider whether the failure to object was ineffective assistance of counsel.
 {¶ 115} The conduct raised by appellant does not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The results of the proceedings were not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 116} Appellant's fourth assignment of error is overruled. *Page 28 
 V. {¶ 117} In his fifth assignment of error, appellant argues that the trial court impermissibly commented upon the seriousness of the crime in violation of Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531
and State v. Foster, 109 Ohio St.3d. 1, 2006-Ohio-856, 845 N.E.2d 470. We disagree.
 {¶ 118} At the outset we note, there is no constitutional right to an appellate review of a criminal sentence. Moffitt v. Ross (1974),417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; McKane v. Durston (1894),152 U.S. 684, 687, 14 S. Ct. 913. 917; State v. Smith (1997),80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668; State v. Firouzmandi, 5th Dist No. 2006-CA-41, 2006-Ohio-5823.
 {¶ 119} Under Ohio law, judicial fact-finding is no longer required before a court imposes consecutive or maximum prison terms. SeeState v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856;State v. Mathis, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855. Instead, the trial court is vested with discretion to impose a prison term within the statutory range. See Mathis, at ¶ 36. In exercising its discretion, the trial court must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case itself." Id. at ¶ 37. Thus, post-Foster, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. State v.Rutter, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061;State v. Delong, 4th Dist. No. 05CA815, *Page 29 2006-Ohio-2753 at ¶ 7-8. Therefore, post-Foster, trial courts are still required to consider the general guidance factors in their sentencing decisions.
 {¶ 120} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. State v.Polick (1995), 101 Ohio App.3d 428, 431; State v. Gant, Mahoning App. No. 04 MA 252, 2006-Ohio-1469, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing State v. Cyrus (1992),63 Ohio St.3d 164, 166; State v. Hughes, Wood App. No. WD-05-024, 2005-Ohio-6405, at ¶ 10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), State v. Woods, 5th Dist. No. 05 CA 46,2006-Ohio-1342 at ¶ 19 (". . . R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).
 {¶ 121} In the case at bar, the Trial Court stated: "[v]ery well. Well, it is the job of the Trial Judge in fashioning a sentence to fashion a sentence which will serve as a deterrent to this individual and to others; one which will not demean the seriousness of the charges which the individual has been found guilty by a jury of 12, and also one that will not demean the seriousness of the crime with which the Defendant has been found guilty of."
 {¶ 122} The Trial Court went on to state: "I recently had another case very similar to this which was tried. I have had other cases this year where firearms have been used. Every judge in the Stark County Court of — Common Pleas has been besieged *Page 30 
with firearm cases. Cases not — as I said in the last case, it appears though what people are doing is settling their difficulties or differences with firearms. They are shooting other people. . . . [I]t is inconceivable to me that this was done with your own child in the car. I can't fathom that at all. I just — it just doesn't have any rational or even irrational explanation to it . . ." (2T. at 498-499).
 {¶ 123} The appellant submits that when the Trial Court rendered these findings he did so in violation of the appellant's Sixth Amendment right because he made findings in excess of those decided by the jury. Appellant further submits that the Trial Court's sentence violated the edicts of Foster.
 {¶ 124} In the case at bar, appellant was found guilty of a felony of the fourth degree. The applicable sentencing range pursuant to R.C2929.14(A)(4) is "six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months." Appellant was also found guilty of a felony of the second degree. The applicable sentencing range pursuant to R.C 2929.14(A) (2) is "2, 3, 4, 5, 6, 7, or 8 years." The addition of the firearm specification mandates an additional three-year sentence.
 {¶ 125} The trial court merged the conviction for improperly handling a firearm in a motor vehicle with the conviction for felonious assault. The trial court sentenced appellant to seven years with a mandatory three years on the firearm specification for an aggregate sentence of ten years. In the case at bar, appellant did not receive a maximum sentence upon his conviction of a felony of the second degree.
 {¶ 126} It appears to this Court that the trial court's statements at the sentencing hearing were guided by the overriding purposes of felony sentencing to protect the *Page 31 
public from future crime by the offender and others and to punish the offender. R.C. 2929.11. Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably, or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in its sentencing appellant to a ten-year sentence of incarceration.
 {¶ 127} In State v. Goggans, Delaware App. No. 2006CA070051, 2207-Ohio-1433 this court noted:
 {¶ 128} "The court could have imposed the maximum sentence without making any statement on the record. The fact that the trial judge explained his reasons for imposing the maximum sentence on the record cannot transform a sentence within the ranges provided by statute into a constitutionally infirm sentence on the grounds that the statements constitute impermissible `judicial fact-finding'."
 {¶ 129} Accordingly, the mere fact that the trial court used language from R.C. 2929.14(C) to explain a sentencing decision does not affect the sentence of appellant.
 {¶ 130} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.
 {¶ 131} Moreover, when sentencing occurred after Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, failure to object at trial to a sentence *Page 32 
that violates Blakely forfeits the issue on appeal. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642. The same rationale would apply to a sentencing hearing that occurred after the decision in Foster was announced. As appellant did not raise his constitutional challenge with the trial court, which he could have, appellant has forfeited the issue on appeal.
 {¶ 132} Appellant's fifth assignment of error is overruled.
 VI. {¶ 133} In his sixth assignment of error appellant argues that the trial court erred by failing to properly instruct the jury on "possession" during the portion of the jury instructions on the charge of improper handling of firearms in a motor vehicle charge. We disagree.
 {¶ 134} As previously noted the trial court's mention of "throwing stars/knives" was taken from a form jury instruction and not intended to be inserted into the jury instructions for improperly handling firearms in a motor vehicle.
 {¶ 135} Rule 30 of the Ohio Rules of Criminal Procedure provides that a party must object to an omission in the court's instructions to the jury in order to preserve the error for appeal. "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." State v.Williford (1990), 49 Ohio St. 3d 247, 251-252. (Citations omitted). Where the trial court fails to give complete or correct jury instructions the error is preserved for appeal when the defendant objects, whether or not there has been a proffer or written jury instruction offered by the defendant. (Id.). Even if an objection is not made in accordance with Rule 30 of the Ohio Rules of Criminal Procedure, or a written jury instruction is required *Page 33 
to be offered by the defendant, Rule 52(B) of the Ohio Rules of Criminal Procedure, the so-called "plain-error doctrine" applies to the failure of the court to properly instruct the jury on "all matters of law necessary for the information of the jury in giving its verdict . . ." pursuant to Section 2945.11 of the Ohio Revised Code. See, State v.Williford, supra; State v. Gideons (1977), 52 Ohio App. 2d 70; State v.Bridgeman (1977), 51 Ohio App. 2d 105.
 {¶ 136} In Neder v. United States (1999), 527 U.S. 1, 119 S.Ct. 1827, the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of Chapman v. California, 386 U.S. 18,87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.
 {¶ 137} In the case at bar, appellant concedes that he did not object nor did he request the trial court correct the instruction. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B).
 {¶ 138} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus. *Page 34 
 {¶ 139} In U.S. v. Dominguez Benitez (2004), 542 U.S. 74,124 S.Ct. 2333, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. SeeArizona v. Fulminante, 499 U. S. 279, 309-310 (1991) (giving examples).
 {¶ 140} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." Id. at 81-82; 124 S.Ct. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240.
 {¶ 141} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'"State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quotingState v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646. *Page 35 
 {¶ 142} Based upon the record and our disposition of appellant's first and fourth assignments of error we find that appellant has failed to demonstrate that the trial court's misstatement to the jury affected his substantial rights.
 {¶ 143} Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 144} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
 Gwin, P.J., Farmer, J., and Wise, J., concur *Page 36 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1