[Cite as *State v. Dover*, 2013-Ohio-2634.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| COURTNEY DOVER | : | Case No. 2012CA00204 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:                    Appeal from the Stark County Court
                                                                 of Common Pleas, Case No.
                                                                 2007CR0153

JUDGMENT:                                                Affirmed

DATE OF JUDGMENT:                               June 17, 2013

APPEARANCES:

For Plaintiff-Appellee                                    For Defendant-Appellant

KATHLEEN O. TATARSKY                         STEPHEN A. GOLDMEIER
Assistant Prosecuting Attorney                  Assistant State Public Defender
Appellate Section                                         250 East Broad Street, Suite 1400
110 Central Plaza South, Suite 150            Columbus, OH 43215
Canton, OH 44702

*Baldwin, J.*

{¶1}    Appellant Courtney Dover appeals a judgment of the Stark County Common Pleas Court overruling his motion to "correct and resentence." Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}    On January 12, 2007, Perry Township Police Officer William Watson responded to the scene of a shooting at the Marc's Plaza on Tuscarawas Street in Perry Township, Ohio. As he pulled into the parking lot, he saw a man lying on the ground bleeding from a large wound in the buttocks area. Officer Watson saw no weapon but taped off the area as a crime scene and asked for the names of any witnesses. Officers located the injured man's vehicle, still running, in the parking lot. Sarah Dotson, who was shopping with her daughter, told Officer Watson that she heard what sounded like a cap gun and saw a man stumble and collapse. She approached the injured man and determined that he was bleeding. The man requested that she contact his girlfriend. She then saw a dark car with circular brake lights leave the parking area. Ms. Dotson called 911.

{¶3}    The police did not recover a weapon or shell casings from the scene of the incident. Prior to being taken by ambulance to the hospital, the injured man told police that "Corey" had shot him.

{¶4}    The ambulance squad arrived and took the injured man to Aultman Hospital. The man was identified as George Curlutu, an unemployed felon. In 2000, he was convicted of possession of cocaine and marijuana and sentenced to three  years

in prison. In 2004, he was convicted of a second count of possessing cocaine and tampering with evidence. He served a two year prison term.

{¶5} Curlutu and appellant were acquaintances and met at St. Mary's Church in Massillon, Ohio at a Texas Hold-Em tournament. They occasionally played poker and smoked weed at appellant's residence on 4th Street near the Canton Baptist Temple. On the day of the shooting, appellant called Curlutu and asked to meet at the Aldi's parking lot. Sensing a chance to go on a "blunt ride"-where you smoke weed together-. Curlutu skipped his classes at barber school and met appellant at the parking lot. Curlutu knew appellant only as "C" or "Corey."

{¶6} Curlutu testified that on the day in question he smoked marijuana. He further stated that he was under the influence of marijuana at the time of the incident. Medical records indicated that he also had cocaine and valium in his system. Curlutu denied being under the influence of those substances. However, he admitted that he had used narcotics in the days preceding the incident.

{¶7} Curlutu pulled into the parking lot and waited for appellant, who arrived driving a blue Chevrolet Impala with tinted windows. Curlutu noticed a little girl in a car seat dressed in a pink coat. Curlutu exited his car, leaving the motor running, and got into appellant's car. Appellant asked Curlutu if he could borrow $300 or $400. Curlutu told appellant he did not have money like that. Appellant responded by reaching down to the left hand part of the door and pulling out a longer barrel revolver. Curlutu's first reaction was to grab the revolver with his left hand. A struggle ensued and the revolver landed on the car seat. Curlutu opened the car door to run and was shot in the buttocks.

{¶8} Curlutu fell down and appellant pulled out of the parking lot. Curlutu was taken to Aultman Hospital. Surgery was performed and eventually a deformed bullet-a .38 special or .357-caliber bullet-was removed from his buttocks area.

{¶9} Detective Matthew Barker of the Perry Township Police Department was called to the scene to assist in the investigation of the shooting. Detective Barker talked with Curlutu at the hospital. Curlutu called his friend, Todd McCune, to learn more about the shooter. Detective Barker learned the shooter's first name was "Courtney," that he drove a blue Chevrolet Impala with tinted windows and lived by the Canton Baptist Temple. Detective Barker also learned that the shooter's cell phone number was (330) 371-3453 and that he had purchased the phone or minutes for the phone at Hever's Meats. Armed with the cell phone number, Detective Barker went to Hever's Meats and learned that the cell phone number belonged to appellant, and that his address was 4456 4th Street N.W., Perry Township, Ohio. Curlutu showed Detective Barker the residence where the shooter resided and it matched the address of appellant that Detective Barker had obtained from Hever's Meats.

{¶10} Detective Barker placed a photograph of appellant in a photo lineup with five other males with the same physical characteristics. Two days after the shooting, Curlutu identified appellant's photograph as the shooter and told Detective Barker that he was 100 percent sure of his identification.

{¶11} Detective Barker went to the home on 4th Street identified as appellant's residence. Detective Barker saw signs that someone was home. He knocked on the door but received no response. Thirty minutes later Tammy Young, appellant's girlfriend and mother of his one-year-old daughter, came home. Ms. Young gave Detective

Barker permission to enter the home. Inside the home Detective Barker found appellant carrying a blue cell phone with a telephone number (330) 371-3453. Detective Barker also collected from the home three coats or jackets belonging to appellant and a box of Winchester .38-caliber ammunition. A blue Chevrolet Impala belonging to Ms. Young was also at the residence. Ms. Young testified the appellant had keys to the car. Ms. Young told the police that she was at work at the time of the incident. The appellant was watching their child when she left, but could have taken the child to a baby sitter.

{¶12}   The three coats or jackets belonging to appellant were taken from the home and sent to the Stark County Crime Laboratory for DNA testing. Officers also obtained and sent to the Crime Laboratory oral swabs from the victim for comparison. Kylie Graham, a technician with the laboratory compared three areas of bloodstains on a gold coat belonging to appellant with the oral swabs taken from the inner cheek of Curlutu. Graham opined that the bloodstains on the coat matched Curlutu's blood in three areas.

{¶13}   Appellant was indicted by the Stark County Grand Jury on charges of felonious assault (R.C. 2903.11(A)(1) and/or (A)(2)), improperly handling firearms in a motor vehicle (R.C. 2923.16(B)) and endangering children (R.C. 2919.22(A)).   The felonious assault charged carried a firearm specification.  Appellant was convicted of all charges following jury trial in the Stark County Common Pleas court.  The trial court imposed a seven year sentence for felonious assault, a 17 month sentence for improperly handling a firearm in a motor vehicle, and a 180 day sentence for endangering children, with all sentences to run concurrently.  In addition, appellant

received a three year mandatory sentence on the firearm specification, to run consecutively, for an aggregate term of ten years incarceration.

{¶14} Appellant filed a direct appeal. This Court affirmed. *State v. Dover*, 5th Dist. No. 2007CA00140, 2008-Ohio-1071. On May 23, 2011, appellant filed a motion to correct his sentence, arguing that the offenses were allied offenses of similar import. The trial court overruled the motion, and appellant did not file an appeal. Appellant filed another motion to correct his sentence on August 15, 2011, arguing that the jury verdict form was faulty because it did not name the degree of the felony. The trial court treated this petition as a petition for postconviction relief and found the issue to be res judicata. This court affirmed. *State v. Dover*, 5th Dist. No. 2011CA00193, 2012-Ohio-1181.

{¶15} On October 1, 2012, appellant filed another motion to "correct and resentence," arguing again that the offenses were allied offenses and that the verdict form did not state the degree of the felony. The trial court overruled the motion. Appellant assigns a single error on appeal:

{¶16} THE TRIAL COURT ERRED WHEN IT DENIED, WITHOUT A HEARING, MR. DOVER'S MOTION REQUESTING MERGER OF HIS CONVICTIONS FOR ALLIED OFFENSES OF SIMILAR IMPORT UNDER R.C. 2941.25.

{¶17} In *State v. Perry,* 10 Ohio St.2d 175, 180, 226 N .E.2d 104 (1967), the Ohio Supreme Court stated, "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment."

{¶18} Appellant could have raised the issue of merger of the offenses as allied offenses of similar import on direct appeal and failed to do so. The issue is now barred by res judicata.

{¶19} Appellant argues that he should be resentenced under the merger standard announced by the Ohio Supreme Court in *State v. Johnson*, 128 Ohio St. 3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Ohio Supreme Court's holding in *Johnson* does not apply retroactively. *State v. Holliday*, 5th Dist. No. 11CAA110104, 2012-Ohio-2376, ¶16. A new judicial ruling may be applied only to cases pending on the announcement date. *Id*. The new judicial ruling may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of his appellate remedies. *Id*., citing *Ali v. State*, 104 Ohio St.3d 328, 2004–Ohio–6592. Appellant had exhausted his appellate remedies in 2008, before the Ohio Supreme Court announced the *Johnson* decision in 2010. The merger test announced in *Johnson* therefore does not apply to appellant's case.

{¶20}   The assignment of error is overruled.  The judgment of the Stark County Common Pleas Court is affirmed.

By:  Baldwin, J.

Wise, P.J. and

Delaney, J. concur.


_____

HON. CRAIG R. BALDWIN


_____

HON. JOHN W. WISE


_____

HON. PATRICIA A. DELANEY

[Cite as *State v. Dover*, 2013-Ohio-2634.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff - Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| COURTNEY DOVER | : | |
| | : | |
| Defendant - Appellant | : | CASE NO. 2012CA00204 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs assessed to appellant.


HON. CRAIG R. BALDWIN


HON. JOHN W. WISE


HON. PATRICIA A. DELANEY